[No. 11780–1–II.   Division Two.   May 16, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN P. COPPIN, *Appellant.*

*Lynn M. Maynard* and *Enbody & Dugaw,* for appellant (appointed counsel for appeal).

*James R. Miller, Prosecuting Attorney,* and *Jerry R. Adair, Deputy,* for respondent.

ALEXANDER, C.J.—John Coppin appeals an exceptional sentence imposed upon him following his plea of guilty to two counts of statutory rape in the first degree. He contends that (1) the prosecutor breached a plea agreement it had with him; (2) the sentencing court improperly considered a California probation report which made reference to

a prior offense; and (3) the reasons cited by the sentencing court in support of the sentence are not supported by the record, do not justify an exceptional sentence and the sentence is clearly excessive. We find no error and affirm.

Coppin was charged in Lewis County Superior Court with three counts of statutory rape in the first degree. The charges arose out of incidents involving Coppin's 5–year–old daughter and another girl, age 4. Coppin ultimately pleaded guilty to two of the three counts after entering into a plea agreement with the Lewis County Prosecuting Attorney. The agreement provided that one count would be dismissed upon Coppin's entry of a plea of guilty to the other two counts, and that a standard range sentence of 102 months, the maximum sentence within the standard range, would be recommended to the sentencing judge.

The trial court accepted Coppin's plea of guilty to two counts, following which the third was dismissed. Thereafter, a sentencing hearing was held, at which time the sentencing court had before it a copy of a 1982 California probation report. The report contained information about a prior conviction Coppin had in California for child molestation. The deputy prosecutor recommended that the sentencing court impose a sentence of 102 months as agreed upon under the plea agreement, but went on to state the following:

> The maximum within the standard range is being recommended for the following reason: One, essentially that there's simply no reason whatsoever to show compassion in this case towards the defendant. The defendant had multiple incidents with both victims involved. The defendant has shown, as far as I can tell, no change from the attitude which he held when he was in California, with similar multiple incidents. The defendant is extremely dangerous, will undoubtedly repeat the behavior when he's released from prison; treatment, according to the [California] probation report and all the evidence here, would not be useful. The only deterrent which would be effective is to put him in a position where he would not be around children.

This is one case when I regret the Sentencing Reform Act even more than in most cases, not only because of the limitations placed upon the length of the sentence, but particularly upon the limitations placed upon possible supervision after he is released. . . .

The State believes that the maximum jail time of 102 months is appropriate.

Coppin's counsel recommended a 77–month sentence, the minimum sentence within the standard range. In support of his recommendation, defense counsel disputed the prosecutor's characterization of the defendant's attitude. Defense counsel also took issue with statements in the California report concerning the defendant's attitude toward the crime he committed in that state and what was described as Coppin's lack of amenability to treatment. No evidentiary hearing on those issues was requested or held.

The sentencing judge asked the deputy prosecutor to explain why he was not seeking an exceptional sentence. He replied:

MR. ADAIR: Number one, your honor, it was not decided that an exceptional sentence could be qualified. The children involved had considerable difficulty isolating the specific events. That was one reason. Second was to save the children from having to go through a trial.

This is not a minimal sentence. It's almost ten years.

I believe those were the two major reasons, to make certain we had a conviction on the defendant, to make sure the children would not have to suffer any further, and that it was not a minimal sentence. We were not certain that an exceptional sentence would be granted, if we were able to convict.

The sentencing court then made the following inquiry:

THE COURT: . . . Are you in effect telling me that, because of the plea bargain, you are not recommending exceptional sentence, or under the law you feel that an exceptional sentence could not be given legally, even if you didn't have the restraint of a plea bargain?

MR. ADAIR: If we did not have the restraint of a plea bargain, we would be arguing for an exceptional sentence.

Following the State's response, the sentencing judge continued the hearing for 2 weeks. At the reconvened hearing the deputy prosecutor expressed some concern about the

degree to which he had advocated the agreed recommendation. He then reiterated his reasons for entering into the agreement.[1]

The hearing was set over for another 2 weeks. At the resumed hearing, Coppin's counsel asserted, for the first time, that the prosecutor had improperly submitted the California probation report to the sentencing court. Defense counsel also reiterated his disagreement with portions of the report pertaining to Coppin's lack of remorse for his conduct and his lack of amenability to treatment, but again, he did not request an evidentiary hearing and none was held.

The sentencing court thereafter imposed an exceptional sentence of 300 months, finding that:

1. The victims were both vulnerable due to their age. . . .
2. There were multiple acts against both victims and multiple methods of committing the crimes.
3. The defendant violated the position of trust that he had with each of his victims.
4. The defendant caused a great deal of injury to the victims that was foreseeable by the defendant because he had done this before. This amounted to intentional cruelty on the part of the defendant.
5. The standard range sentence maximum of 102 months is not sufficient to protect the children of the State of Washington given the lack of the defendant's amenability to treatment and high risk to reoffend.

---

[1]The deputy prosecutor stated:

"The State, as it did last week, would indicate that it made the plea bargain because it thought it was in the best interest of the victims and society in general. The victims would not have to go through a hearing or trial. The State would have two guaranteed convictions on statutory rape in the first degree.

"For those two convictions, the recommendation was at the high end, and at least in comparison with other cases was a substantial sentence of 102 months.

"The defendant was cooperative throughout.

"And, finally, even if the State went to trial, there would be no assurance whatsoever that it could obtain an exceptional sentence.

"Based on all of those, the State thought that the agreement made was of benefit to the victims and the public, and that the State's recommendation should be followed."

## BREACH OF PLEA AGREEMENT

The first issue we are asked to address is whether the prosecutor breached the plea agreement it had with Coppin.[2] The standard which governs our analysis is that set forth by the United States Supreme Court in *Santobello v. New York,* 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971), wherein the Court acknowledged that due process requires that a prosecuting attorney adhere to the terms of a plea agreement. *See also In re Palodichuk,* 22 Wn. App. 107, 109, 589 P.2d 269 (1978). Adherence to the terms of a plea agreement, in turn, requires that a prosecutor fulfill those promises which can be said to be part of the inducement or consideration which led the defendant to enter into the plea agreement. *Santobello,* 404 U.S. at 262.

A. <u>Terms of Agreement</u>. Coppin first asserts that the plea agreement carried with it an implied promise by the prosecutor to do more than just make the promised recommendation. He contends that a prosecutor must "advocate" in favor of the agreed sentence and that the deputy prosecutor failed to do so. As support for his contention, Coppin cites *United States v. Brown,* 500 F.2d 375, 377 (4th Cir. 1974), wherein the Fourth Circuit Court of Appeals concluded that a promise to make a sentencing recommendation under a plea agreement includes an implied promise that such recommendation will be made with "some degree of advocacy." *Brown,* 500 F.2d at 377. Under the *Brown*

---

[2]Coppin also contends that the sentencing court breached the plea agreement by taking into consideration the fact that multiple acts were committed against each victim. Coppin asserts that the prosecutor's agreement to dismiss the third count, which involved a second incident against one of the victims, precludes the sentencing court's consideration of such additional acts for purposes of sentencing. This argument misperceives the distinction between a prosecutor's duty with respect to a plea agreement and that of the sentencing court. A trial court may consider whatever information it considers necessary in imposing a sentence. *In re Palodichuk,* 22 Wn. App. 107, 111, 589 P.2d 269 (1978). Pursuant to RCW 9.94A-.370(2), facts evidencing multiple incidents of sexual abuse may be considered by the sentencing court, which facts are expressly recognized as justifying an exceptional sentence. *See* RCW 9.94A.390(2)(e).

rationale, a prosecutor breaches a plea agreement when it fails to affirmatively advocate a sentencing recommendation. *Brown,* 500 F.2d at 377.

*Brown* has been cited with approval by our Supreme Court. *See State v. Peterson,* 97 Wn.2d 864, 651 P.2d 211 (1982). In *Peterson,* the defendant pleaded guilty to a charge of third degree assault pursuant to a plea agreement that provided that the prosecutor would recommend no jail time. *Peterson,* 97 Wn.2d at 865. At the sentencing hearing, the trial judge denied the defendant's request to permit the prosecutor to state its reasons for its recommendation. *Peterson,* 97 Wn.2d at 865. The trial court thereafter imposed a sentence of 60 days in jail. The defendant appealed, contending that the prosecutor had breached the plea agreement by exhibiting a "lack of zeal" in explaining the recommendation. *Peterson,* 97 Wn.2d at 866.

In addressing the defendant's allegation that the plea agreement had been breached, a majority of our Supreme Court indicated that it approved the view set forth by the Fourth Circuit in *United States v. Brown, supra,* that a sentencing recommendation is to be made with some degree of advocacy. *Peterson,* 97 Wn.2d at 866. The statement is dicta, however, because the court reversed and remanded for resentencing on the ground that the trial court's denial of the defendant's request violated the defendant's right of allocution as guaranteed by CrR 7.1(a)(1). *Peterson,* 97 Wn.2d at 867–68.

The holding in *Brown* has since been repudiated by the United States Supreme Court. *See United States v. Benchimol,* 471 U.S. 453, 85 L. Ed. 2d 462, 105 S. Ct. 2103 (1985). In *Benchimol,* a defendant appealed his sentence following a plea of guilty, contending that the prosecutor had breached the plea agreement by failing to "enthusiastically" support the recommendation. *Benchimol,* 471 U.S. at 454. The Ninth Circuit Court of Appeals, relying upon *Brown,* agreed, concluding that the prosecutor had breached the plea agreement because it "'made no effort to explain its reasons for agreeing to recommend a lenient

sentence but rather left an impression with the court of less–than–enthusiastic support for leniency.'" *Benchimol,* 471 U.S. at 454.

In reversing and reinstating the sentence, the United States Supreme Court held that an agreement to recommend a particular sentence does not encompass an implied duty to "enthusiastically" make the recommendation. *Benchimol,* 471 U.S. at 456. Indeed, the Court questioned whether the parties to a plea agreement could ever bargain regarding the degree of advocacy to be made by a prosecutor with respect to a sentence recommendation. *Benchimol,* 471 U.S. at 456. The Court concluded that a prosecutor fulfills its duty with regard to a promise to make a recommendation with respect to sentence by making the promised recommendation. *Benchimol,* 471 U.S. at 456.

We, too, have serious reservations regarding any duty, agreed or implied, on the part of the prosecutor to advocate a sentence recommendation agreed upon under a plea agreement. This is so because, as noted by Division Three of this court upon appeal from the sentence imposed in *Peterson* after remand, a prosecutor cannot hide or distort the true reasons for a plea bargain under the pretext of advocating it. *See State v. Peterson,* 37 Wn. App. 309, 313, 680 P.2d 445 (1984).[3]

In our judgment the imposition of a duty of advocacy does little more than erode the confidence of the court in such recommendations as well as impose a potentially

---

[3]We note that upon remand in *Peterson,* the prosecutor merely recited the terms of the plea agreement without advocating in favor of the recommendation. *Peterson,* 37 Wn. App. at 313. At defendant's request, the prosecutor stated his reasons for the recommendation, which were not favorable to the defendant, following which a sentence in excess of that recommended under the plea agreement was imposed. On appeal from the sentence imposed after remand, a divided panel of Division Three held that the "some degree of advocacy" standard was satisfied by the prosecutor reciting the terms of the plea bargain and explaining the terms of the plea bargain and reasons for the recommendation upon the defendant's request. *Peterson,* 37 Wn. App. at 312-13. The majority reasoned that by exercising restraint in not explaining why the sentence was being recommended, the prosecutor was, in effect, advocating for the plea agreement. *Peterson,* 37 Wn. App. at 312.

conflicting duty upon prosecutors.[4] We conclude, therefore, that the terms of a plea agreement do not include an implied promise to affirmatively advocate an agreed upon sentence recommendation. Accordingly, a prosecutor fulfills its duty under the plea agreement by simply making the promised recommendation.[5]

B. Adherence to Terms of Agreement. Having concluded that a plea agreement merely requires the prosecutor to make the promised recommendation, we must now address whether the prosecutor fulfilled that obligation here.

In making the promised recommendation, a prosecutor may not engage in conduct which suggests terms contrary to those agreed upon under the plea agreement. *See In re Palodichuk, supra.* In *Palodichuk,* this court held that a breach of a plea agreement occurs when the conduct of the prosecutor "taints" the sentencing process such that it effectively undercuts the plea agreement. *Palodichuk,* 22 Wn. App. at 110. The prosecutor in *Palodichuk* stated in a presentence report that it had "second thoughts" about the recommendation it made pursuant to the plea agreement, as well as commenting to the sentencing judge that the only way the recommended sentence (probation) would work would be if there were a number of conditions. *Palodichuk,* 22 Wn. App. at 111. Viewing that conduct, we concluded that the prosecutor had "tainted the sentencing process so that a breach in fact did occur." *Palodichuk,* 22 Wn. App. at 110.

---

[4]A prosecutor, like any other attorney, has a duty of candor toward the tribunal which precludes it from making a false statement of material fact or law to such tribunal. *See* RPC 3.3.

[5]This opinion should not be construed as affecting the defendant's right, pursuant to his right of allocution as recognized in *Peterson,* to request an explanation by the prosecutor as to its reasons for making the recommended sentence. As noted in *Peterson,* however, such reasons need not be favorable to the defendant. *Peterson,* 97 Wn.2d at 869.

Unlike the conduct of the prosecutor in *Palodichuk,* however, we do not find that the prosecutor's conduct here crossed the line between the proper conduct of a prosecutor with respect to sentencing and improper conduct in derogation of the plea agreement. The prosecutor reiterated, on numerous occasions, that the recommended sentence of 102 months was itself a severe penalty, constituting the maximum under the standard range for the offenses. The prosecutor's reference to the defendant's prior bad acts was made in support of his argument that the sentencing judge should impose the maximum period of incarceration under the standard range. This was consistent with the plea agreement.

The additional comments of the prosecutor regarding his reasons for not seeking an exceptional sentence were made in response to inquiries by the sentencing judge. While one might question the wisdom of such inquiries by the sentencing court, a prosecutor under such circumstances has no alternative but to answer the tribunal honestly. *See* RPC 3.3. Accordingly, we conclude that the prosecutor's statements and his submission of the California probation report did not amount to a breach of the plea agreement because in neither did the prosecutor express any reservations with regard to the recommended sentence.[6]

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder

---

[6]We further note, with regard to the prosecutor's submission of the California probation report, that RCW 9.94A.460, prohibits a prosecutor from agreeing to withhold relevant information from a court concerning a plea agreement. The information contained in the California report was relevant to a determination of whether the recommendation made under the plea agreement was appropriate. Furthermore, the report itself did not contain any words or statements by the prosecutor which were contrary to the recommended sentence. Accordingly, the bare submission of such documents, although prejudicial to Coppin, does not amount to a breach of the plea agreement by the prosecutor.

shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Affirm.

WORSWICK, J., concurs.
REED, J., concurs in the result.

Review denied at 115 Wn.2d 1011 (1990).