[No. 37257-2-I.   Division One.   October 7, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. RONALD
TALLEY, *Appellant*.

---

752

*James R. Dixon* and *Nielsen & Acosta,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Erin Riley, Deputy,* for respondent.

AGID, J. — Under the Sentencing Reform Act, a court cannot rely on facts that have not been acknowledged or admitted by the defendant or proved at trial in imposing an exceptional sentence unless the State can prove them by a preponderance of the evidence. Ronald Talley challenges his exceptional sentence for third degree rape, contending the court considered disputed facts without holding an evidentiary hearing. We agree and reverse his sentence. Talley asks us to remand with instructions to enter a standard range sentence because the aggravating factors the trial court relied on are insufficient to justify an exceptional sentence for his crime. Because we conclude that a trial court could justify an exceptional sentence in this case if the State can prove the facts necessary to support it, we remand for resentencing. Talley also asserts that, if the State is called upon to prove the facts that would support an exceptional sentence, it violates its obligation under the plea agreement. We hold that, once the State has recommended to the sentencing court the sentence to which it agreed, it does not violate the plea

agreement by putting on evidence at the request of the sentencing judge which would support an exceptional sentence.

## FACTS

On July 30, 1994, Talley and the victim, DT, were both out with friends at what used to be Club Oz, an underage dance club near the Seattle Center. DT had never met Talley. Not long after she and her friends got there, Talley came across the dance floor, took DT by the hand and led her past the dance floor to a secluded stairwell. According to Talley, they started kissing and eventually engaged in consensual oral and vaginal intercourse. Talley told the police that he called DT a whore after they had intercourse and that DT started yelling at him and pushed him down some steps. Talley said he got up, hit her and returned to the club. According to DT, after Talley got her in the stairwell he demanded oral sex, which she performed because she was scared. He hit her in the head and told her to shut up when she told him she was a virgin and asked him to stop. He then forced her to the ground, removed her clothes and vaginally raped her. After the incident, DT was taken to a hospital. The medical report lists, among other injuries, a bite on her chest, abrasions on her knees and back, and tears to her vagina.

The State charged Talley with second degree rape. The case went to trial but ended in a mistrial when the jury was unable to reach a verdict. The State then filed an amended information charging Talley with third degree rape. Talley entered an *Alford*[1] plea to the amended charge. As part of the plea agreement, the State agreed to recommend a standard range sentence.

The sentencing judge held three separate hearings on August 11, August 24 and September 1, 1995. At the August 11 hearing, the State and defense presented the

---

[1] *See North Carolina v. Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

same sentencing recommendation. The prosecutor told the court he was aware that the Department of Corrections recommended an exceptional sentence, but he did not think there was a legal justification for it in this case. The court also heard from the victim, her sister and father, a member of her support group for rape victims, Talley's community corrections officer, Talley, and his father-in-law.

Talley's attorney argued that the Department of Corrections' recommendation for an exceptional sentence was inappropriate. She pointed out that, because Talley had entered an *Alford* plea, he had not stipulated to any of the facts in the documents before the court. Talley's attorney expressed concern that the court might consider facts that had not been stipulated to or established to give him an enhanced sentence. The following colloquy took place:

> [DEFENSE]: . . . What I'm trying to convey to the Court is that this Court cannot now step in and enhance those facts to find substantial and compelling reasons for an increased sentence.
>
> THE COURT: Why not? I've read the cert[ification for determination of probable cause]. Nobody has provided me with the police reports. But the cert on its face contains a tremendous amount of information. You are telling me I shouldn't take any of that into consideration?
>
> [DEFENSE]: What I'm saying is if the Court is considering using those as a basis for a higher charge or as a basis for an exceptional sentence, Mr. Talley, under the authority that I've provided to the Court, is entitled to [an] evidentiary hearing on what are the facts that — or the fact — that the Court will be relying on in finding for an exceptional sentence. We don't at this point know what the Court is thinking in terms of whether it's considering an exceptional sentence. And if the Court is, then we'd be in a position to ask the Court for that evidentiary hearing.
>
> THE COURT: I am giving an exceptional sentence, and I'll give you a time for an evidentiary hearing.

At the end of the hearing, the court set an evidentiary hearing for September 1. The court told the parties that it would consider transcripts from the trial and anything else they thought appropriate.

The court held a second hearing on August 24, at the defense request, before the scheduled September 1 hearing. At the second hearing, the defense reiterated its objection to the court's considering facts in the certification for probable cause and police reports to support an exceptional sentence. The court stated that it "understood [the defense was] asking for an evidentiary hearing. But if you are not asking for an evidentiary hearing, I'm not going to hold one." The court later stated:

> This is a very strange procedure. You either want the court to have an evidentiary hearing, because you are objecting to me reading the cert and the police reports while, on the other hand, you filed an Alford plea and you said that I could use the cert and the police reports at sentencing.

At the September 1 hearing, the State again recommended a standard range sentence. The defense again objected to an exceptional sentence and indicated that it had submitted additional materials for the court's consideration, including transcripts of trial testimony. The trial court imposed an exceptional sentence of 24 months, twice the standard range, citing Talley's deliberate cruelty, the multiple incidents of intercourse and the negative impact the rape would have on DT.

## DISCUSSION

■ ■ A court may only consider facts admitted or acknowledged by a defendant or proved at trial in determining his sentence. If a defendant disputes any material facts the court intends to rely on, it can either disregard the disputed facts or require the State to prove them by a preponderance of the evidence at a hearing for this purpose:

> In determining any sentence, the trial court may rely on no

more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. Acknowledgment includes not objecting to information stated in the presentence reports. Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence.

RCW 9.94A.370(2). It is undisputed that the trial court relied on facts in police reports and in the State's probable cause certification, and that Talley neither admitted or acknowledged these facts. Although Talley agreed that the court could review the certification for determination of probable cause and police reports to review his guilty plea, he did not agree they could be used for sentencing purposes. In *State v. Young*, 51 Wn. App. 517, 754 P.2d 147 (1988), we held that a trial court errs in considering allegations in a probable cause certification where, as here, the defendant does not admit to those factual allegations. We noted that when a defendant enters an *Alford* plea, he clearly manifests his intention not to admit to the State's factual allegations. 51 Wn. App. at 522. Since Young "made it clear at sentencing that he intended to dispute the State's factual allegations, he [could not] be deemed to have admitted or acknowledged them." 51 Wn. App. at 522. The reason trial courts are required to hold an evidentiary hearing under these circumstances, we explained, is to ensure that defendants are punished only for facts that "have been admitted or proved, not merely alleged." 51 Wn. App. at 523. Thus, the trial court was required to hold an evidentiary hearing before it could consider material facts Talley disputed and give him an exceptional sentence based on those facts.

As a threshold matter, the State contends that the trial court's September 1 hearing was an evidentiary hearing at which the defense fully participated by submitting materials to the court for review. This argument is completely without merit. It is abundantly clear from the

record that the September 1 hearing was a sentencing hearing, and neither the court nor the parties considered it an evidentiary hearing. The court had also stated at the August 11 hearing that it was not going to hold an evidentiary hearing unless the defense requested one and that otherwise it would consider the documents before it and additional materials submitted by the parties. While the defense submitted materials to the court for consideration, it obviously did so in an attempt to controvert the facts that it argued the court was improperly considering in the first place. But the court neither indicated it reviewed those materials nor resolved the disputed facts they presented. Furthermore, although the court heard statements from people attending the September 1 hearing, it did not take sworn testimony from any of them. The September 1 hearing was not an evidentiary hearing as contemplated by RCW 9.94A.370(2).

■■■■ Talley argued below, as he does here, that a court cannot hold an evidentiary hearing without forcing the prosecutor to violate the terms of the State's plea agreement where a prosecutor has agreed to recommend a standard range sentence. He argues that when a trial court orders an evidentiary hearing under RCW 9.94A.370(2), it is essentially requiring the prosecutor to prove facts that would support a higher sentence than he agreed to recommend and thereby violate his obligation to advocate for the recommended sentence. We disagree. The State agreed to recommend a standard range sentence for Talley, which it did. Under *State v. Coppin*, 57 Wn. App. 866, 791 P.2d 228, *review denied*, 115 Wn.2d 1011 (1990), this was sufficient to discharge its obligation to "adhere to the terms of a plea agreement." 57 Wn. App. at 871. Coppin argued that a plea agreement carries "with it an implied promise by the prosecutor to do more than just make the promised recommendation." 57 Wn. App. at 871. He contended that a prosecutor must also advocate in favor of the agreed sentence. We rejected this argument, holding that "the terms of a plea agreement do not include an implied

promise to affirmatively advocate an agreed upon sentence recommendation. Accordingly, a prosecutor fulfills its [sic] duty under the plea agreement by simply making the promised recommendation." 57 Wn. App. at 874. Here, requiring the State to prove the disputed facts at an evidentiary hearing would not put it in the untenable position of violating its plea agreement, as Talley argues, because it had already fulfilled its end of the agreement.

The authority to sentence a defendant rests solely with the trial court. Although the State may agree to recommend a particular sentence, a trial court is free to ignore its recommendation. *State v. Gutierrez*, 58 Wn. App. 70, 74, 791 P.2d 275 (1990). If it orders a hearing to establish disputed facts, the prosecutor has an obligation as an officer of the court to participate in the hearing and present evidence that will help the court make its decision. Presenting evidence that will help the court make a decision does not amount to advocating against its earlier recommendation. Thus, it does not violate the terms of the plea agreement.

■ Where a defendant disputes material facts, RCW 9.94A.370(2) requires the court either to disregard those facts "or grant an evidentiary hearing on the point." This language is mandatory. The court here did not order an evidentiary hearing because it apparently thought it did not have to if the defendant objected to it. When Talley objected to the hearing because he thought it would improperly force the prosecutor to violate the terms of the plea agreement, the trial court stated it was not going to hold a hearing if he objected and proceeded to consider disputed facts. The trial court's resolution of this issue demonstrates a fundamental misunderstanding of RCW 9.94A.370(2). Under the statute, it is the trial court's responsibility to hold an evidentiary hearing if it wants to consider disputed facts. It is not the defense's duty to insist on one. *Cf. State v. Crider*, 78 Wn. App. 849, 899 P.2d 24 (1995) (trial court does not discharge its mandatory duty to allow allocution by shifting to the defendant the burden

of requesting it). Talley's sentence must be reversed because the trial court improperly considered disputed facts in giving him an exceptional sentence without requiring the State to prove them at an evidentiary hearing.

■ Talley contends we should remand this case with instructions to impose a standard range sentence because the facts the trial court relied on do not justify an exceptional sentence. The court cited three grounds for its sentence: deliberate cruelty, multiple sexual acts and the negative impact of the crime on the victim. The State concedes error on the third point. The concession is well taken because the impact of Talley's crime is not so distinctive that it is not normally associated with third degree rape. *See State v. Johnson*, 69 Wn. App. 528, 538, 849 P.2d 662 (1993), *aff'd*, 124 Wn.2d 57, 873 P.2d 514 (1994).

To reverse a sentence outside the standard range, the reviewing court must find either that the reasons given by the sentencing judge are not supported by the record or that those reasons do not justify a sentence outside the standard range. RCW 9.94A.210(4). We conclude that a court could base an exceptional sentence on a finding of deliberate cruelty or multiple acts in this case, assuming the State can prove the facts necessary to support the findings.

■ The court held that Talley manifested deliberate cruelty by repeatedly hitting DT in the head, biting her on the chest, and referring to her as a "bitch" and a "whore" during and after the rapes. A court may consider as an aggravating circumstance that the "defendant's conduct during the commission of the current offense manifested deliberate cruelty to the victim." RCW 9.94A.390(2)(a). Deliberate cruelty is "gratuitous violence, or other conduct which inflicts physical, psychological or emotional pain as an end in itself." *State v. Strauss*, 54 Wn. App. 408, 418, 773 P.2d 898 (1989), appeal after remand, 119 Wn.2d 401, 832 P.2d 78 (1992). Deliberate cruelty contemplates acts not usually associated with

simply committing the offense. *State v. Payne*, 45 Wn. App. 528, 726 P.2d 997 (1986).

Talley pleaded guilty to third degree rape. RCW 9A.44.060(1), the section under which he was charged, provides:

> A person is guilty of rape in the third degree when, under circumstances not constituting rape in the first or second degrees, such person engages in sexual intercourse with another person, not married to the perpetrator:
>
> (a) Where the victim did not consent . . . to sexual intercourse with the perpetrator and such lack of consent was clearly expressed by the victim's words or conduct.

Third degree rape can be elevated to second degree rape when it is accomplished by forcible compulsion. RCW 9A.44.050(1)(a). Thus, the issue is whether Talley's actions, assuming the State can prove them, included gratuitous violence or acts not usually associated with third degree rape, which must be nonconsensual, but not necessarily forcible.

■ Talley contends that the court's consideration of his use of violence during the rape violated the real facts doctrine. The doctrine prohibits a sentencing court from considering "[f]acts that establish the elements of a more serious crime or additional crimes . . . to go outside the presumptive sentence range." RCW 9.94A.370(2). Talley argues that his alleged violence during and after the crime is a fact that could be used to establish the forcible compulsion element of second degree rape. Thus, he reasons, the court erred in relying on it to sentence him for third degree rape because the trial court essentially punished him for second degree rape, although the State could not convince a jury that he committed that crime. The real facts doctrine does not prohibit a sentencing court from considering facts that could also be used to prove a higher degree crime, as long as it does not do so because it is dissatisfied with the plea agreement or jury verdict. Furthermore, the sentence Talley received was not as high as the

bottom of the standard range for second degree rape. He was not punished for a crime he did not commit.

■ If Talley used the words "bitch" and "whore" and left DT naked, hysterical and bleeding in the stairwell following the attack, these actions could also justify an exceptional sentence. A trial court may properly consider a defendant's behavior following the crime if it manifests cruelty to the victim and is a continuation of the crime. *See State v. Vaughn*, 83 Wn. App. 669, 680, 924 P.2d 27 (1996) (trial court may consider the entire transaction, including crime-related acts occurring after the crime is complete in imposing an exceptional sentence).

■ ■ The remaining issue is whether the trial court can rely on multiple sexual acts to justify an exceptional sentence. The court found that Talley engaged in two sexual acts with DT, forcing her to perform oral sex and forcing her to have vaginal/penile intercourse. We conclude that these facts could support an exceptional sentence, assuming the State can prove them. Courts have divided on the issue of whether multiple sexual acts alone can support an exceptional sentence. We have held, albeit without much discussion, that the fact that a defendant raped his victim twice justified an exceptional sentence because inflicting multiple penetrations on a victim is more egregious than the single act necessary to commit the crime. *See State v. Falling*, 50 Wn. App. 47, 747 P.2d 1119 (1987). Other cases hold that more than one act of sexual intercourse cannot, standing alone, constitute a separate aggravating factor, but can be considered as evidence of deliberate cruelty. *See, e.g., State v. Strauss*, 54 Wn. App. 408, 419, 773 P.2d 898 (1989) (rejecting the State's contention that the defendant's multiple penetrations supported the trial court's finding of deliberate cruelty); *State v. Post*, 59 Wn. App. 389, 797 P.2d 1160 (1990) (rape defendant's multiple *attempts* at penetration over one hour did not, without more, warrant finding of deliberate cruelty, distinguishing *Falling* because that case involved both oral and vaginal intercourse over 30-minute

period), *aff'd*, 118 Wn.2d 596, 826 P.2d 172, 837 P.2d 599 (1992); *but see State v. Herzog*, 69 Wn. App. 521, 849 P.2d 1235, *review denied*, 122 Wn.2d 1021 (1993) (multiple penetrations can be evidence of deliberate cruelty because multiple penetrations or sexual acts over a period of time are more degrading than a single act of rape). We recently resolved this issue in *State v. Vaughn*, 83 Wn. App. 669, an opinion filed after oral argument in this case. There we held that multiple penetrations or sexual acts prolong the period of danger and degradation endured by the victim and may alone be an aggravating factor and support a finding of deliberate cruelty. *Vaughn*, 83 Wn. App at 678.

Because, as our discussion demonstrates, a court could find grounds for an exceptional sentence if the State can prove the facts necessary to support them, we remand for resentencing. On remand, we direct that Talley be sentenced by a different judge because the court's statement at the August 11 hearing that she had already decided to give him an exceptional sentence even though there had been no evidentiary hearing suggests she may have prejudged the matter.

GROSSE and WEBSTER, JJ., concur.

Reconsideration denied November 22, 1996.

Review granted at 131 Wn.2d 1023 (1997).