[No. 17743-2-III. Division Three. August 29, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM MARK JULIAN, *Appellant*.

*William Mark Julian*, pro se.

*Melvin D. Hoit*, for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for respondent.

KATO, J. — Pursuant to a plea agreement, William M. Julian pleaded guilty to one count of first degree child

molestation in exchange for the State's recommendation of the special sexual offender sentencing alternative (SSOSA). Rather than apply SSOSA, the court imposed a standard range sentence. Contending the State violated the plea agreement by failing to recommend SSOSA affirmatively to the court, Mr. Julian appeals. Pro se, he also challenges certain conditions of his community supervision. Except for the condition prohibiting alcohol use, we affirm.

Mr. Julian was charged with first degree molestation of a four-year-old child. In a plea agreement, the State promised to recommend SSOSA in return for his guilty plea.

At the plea hearing on May 29, 1998, the plea agreement was before the court as set forth in the Defendant's Statement on Plea of Guilty. Mr. Julian was represented by counsel. The judge advised Mr. Julian of the rights he was waiving by pleading guilty. The judge explained the possible consequences of the plea, including the standard range sentence, maximum penalty, various costs, and community placement. She also went over DNA (deoxyribonucleic acid) blood sampling, sex offender registration, and the implications of a felony guilty plea on future three-strikes proceedings and the right to bear arms.

The judge explained that she had the discretion to allow SSOSA if Mr. Julian was found amenable to treatment. Mr. Julian had already been evaluated for SSOSA, but the results had not yet been received. The judge described the program and informed Mr. Julian of the factors she would consider in determining whether to grant SSOSA, including a strong emphasis on the defendant's ability to pay.

The judge then addressed Mr. Julian with respect to the plea agreement:

> THE COURT: All right. Now, your attorney and the prosecuting attorney have discussed this case; and the prosecuting attorney indicated, if you would plead guilty to the crime of Child Molestation in the First Degree, that the State would recommend a [SSOSA] option if you were found amenable to treatment. . . .
>
> Is that the nature of the agreement, [defense counsel]?

[DEFENSE COUNSEL]: It is, Your Honor.

. . . .

THE COURT: Do you understand I don't have to follow that agreement?

THE DEFENDANT: Yes, Your Honor.

The judge invited the prosecutor to address the court. The prosecutor outlined the State's case. The judge accepted the guilty plea.

Sentencing was held on July 15, 1998, before the same judge. Defense counsel made the case for SSOSA. The prosecutor was then called on and said, "I don't have an awful lot to add." The victim's father addressed the court and asked for the high end of the standard range with no work release. The judge explained that the State and Mr. Julian entered into a plea negotiation to recommend SSOSA and asked if the State had discussed it with him. The father said the State had never contacted him about any plea agreement, so he basically did not know what was going on.

The judge gave serious consideration to the SSOSA option. She discussed in great detail the potential benefits and disadvantages of SSOSA. Ultimately, the judge found too many negative considerations.

The presentence investigation report (PSI) declared Mr. Julian amenable to treatment. However, the judge expressed concerns about Mr. Julian's tendency to blame the victim. She attached significance to his failure to complete a drug treatment program imposed as part of some prior deferred prosecution. This caused the judge to question his ability to meet the much more rigorous and prolonged demands of SSOSA.

The judge was also influenced by Mr. Julian's marginal financial situation. He was living with his mother, had a job, and was prepared to take a second job to pay for SSOSA. However, the judge noted that the job was low paying and speculated that, if a family quarrel caused him to leave his mother's house, he would have difficulty keep-

ing up with the costs of the program. The judge rejected Mr. Julian's proposal that he could work two jobs to finance the treatment, pointing out he would not have time to work two jobs and still meet program demands. This was particularly true as Mr. Julian had "multiple treatment issues," including unresolved substance abuse and generalized mental health issues. Finally, the judge found Mr. Julian lacked the requisite family and community support he would need to succeed in SSOSA.

Concluding that both the community and Mr. Julian would benefit more if he underwent a period of confinement during which he would have access to both free treatment and the time to participate fully, the judge imposed a standard range sentence.

The issue is whether the State failed to abide by the plea agreement when the only sentence recommendation by the prosecutor, made after defense counsel had argued for SSOSA, was the statement: "I don't have an awful lot to add."

The State initially points out the defense made no objection below that the prosecutor was not honoring the plea agreement. It claims the issue cannot now be raised for the first time on appeal.

To be considered for the first time on appeal, an alleged error must be a "manifest error affecting a constitutional right." RAP 2.5(a)(3); *State v. Scott*, 110 Wn.2d 682, 686, 757 P.2d 492 (1988). "Manifest" means the appellant must make a showing of actual prejudice. *State v. McFarland*, 127 Wn.2d 322, 333-34, 899 P.2d 1251 (1995); *Scott*, 110 Wn.2d at 688.

"A plea of guilty constitutes a waiver of significant rights by the defendant, among which are the right to a jury trial, to confront one's accusers, to present witnesses in one's defense, to remain silent, and to be convicted by proof beyond all reasonable doubt." *State v. Tourtellotte*, 88 Wn.2d 579, 583, 564 P.2d 799 (1977). Therefore, due process demands that the prosecutor adhere to the terms of the plea

agreement. *State v. Sledge*, 133 Wn.2d 828, 839, 947 P.2d 1199 (1997) (citing *Santobello v. New York*, 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971)). Because Mr. Julian alleges a manifest error affecting a constitutional right, we review the issue he raises for the first time on appeal.

Mr. Julian contends the statement, "I don't have an awful lot to add," is not a recommendation; rather, it is a failure to make any recommendation at all and thus constitutes a breach of the plea bargain contract. He challenges the adequacy of the State's performance of the bargain on statutory as well as constitutional grounds.

■ ■ Courts should construe statutes so as to give meaning to all the words. Whenever possible, a statute's meaning must be derived from the language itself without judicial construction or interpretation. *State v. Riles*, 135 Wn.2d 326, 340, 957 P.2d 655 (1998).

RCW 9.94A.090(1) provides in relevant part:

> If a plea agreement has been reached by the prosecutor and the defendant . . . they shall at the time of the defendant's plea state to the court, on the record, the nature of the agreement and the reasons for the agreement.

The superior court rules also require that "[t]he nature of the agreement and the reasons for the agreement shall be made a part of the record at the time the plea is entered." CrR 4.2(e). The parties complied with the statute and court rule here. The record shows the court was fully apprised of the nature and terms of the plea agreement as well as the reasons for it.

■ Standing alone, a plea bargain has no constitutional significance. It is a "mere executory agreement" until it is confirmed by the judgment of the court. *Mabry v. Johnson*, 467 U.S. 504, 507, 104 S. Ct. 2543, 81 L. Ed. 2d 437 (1984).

A plea bargain is no more than a proposal, an offer which the State can revoke until the moment when the defendant enters a plea, or has acted detrimentally in reliance on the offer. *State v. Bogart*, 57 Wn. App. 353, 356, 788 P.2d 14 (1990). The bargain is confirmed by the defendant's enter-

ing a guilty plea on the record before the court. Only then does the State become obligated to comply with the terms of the agreement. However, it is then required to fully comply. *Id.* at 356; *State v. Hall*, 104 Wn.2d 486, 490, 706 P.2d 1074 (1985).

■ The written plea agreement is constitutionally optional, not the performance of the promise. Neither RCW 9.94A.090 nor CrR 4.2 requires the plea agreement to be in writing, but both do require that the agreement be stated on the record to the court. *State v. Jones*, 46 Wn. App. 67, 70, 729 P.2d 642 (1986). The State fulfills its duty under the plea agreement by simply making the promised recommendation. *State v. Coppin*, 57 Wn. App. 866, 874, 791 P.2d 228, *review denied*, 115 Wn.2d 1011 (1990).

The test for whether the State's performance of a plea agreement meets constitutional muster is whether the prosecutor contradicts, by word or conduct, the State's recommendation. *State v. Talley*, 134 Wn.2d 176, 187, 949 P.2d 358 (1998). The State may not undercut the bargain. *Sledge*, 133 Wn.2d at 840; *In re Personal Restraint of Palodichuk*, 22 Wn. App. 107, 589 P.2d 269 (1978). The conduct is evaluated by an objective standard, regardless of either the prosecutor's motivations or justifications for the failure to perform. *State v. Jerde*, 93 Wn. App. 774, 780, 970 P.2d 781, *review denied*, 138 Wn.2d 1002 (1999).

Mr. Julian contends the prosecutor acted in bad faith, in an attempt to avoid difficulties with his resolution of the case after he failed to communicate with the victim's family. The State disputes this characterization of the motivation. If the prosecutor's failure to perform constituted conduct undercutting the plea bargain, however, the fact that it may have been inadvertent is irrelevant. *Santobello*, 404 U.S. at 262.

The prosecutor need not exhibit enthusiasm for the recommendation. *Coppin*, 57 Wn. App. at 874. But he must make it, and do so in good faith, not holding back any relevant information. RCW 9.94A.460; *Jerde*, 93 Wn. App. at 780.

■ Noting that Mr. Julian was amenable to treatment, defense counsel argued for SSOSA and no jail time beyond that already served. If more time were ordered, the defense asked for work release. The prosecutor then stated that he did not "have an awful lot to add," asked the court to impose the conditions set forth in the PSI, and indicated he had no objection to work release.

In the circumstances here, the prosecutor did not breach the plea agreement. Mr. Julian, the State, and the court were all aware of the terms of the plea agreement. By stating there was not much to add to what defense counsel has already argued to the court in favor of SSOSA, the prosecutor orally expressed his acquiescence in the sentencing alternative as promised. Though hardly made enthusiastically, the State's recommendation was nonetheless clear to all concerned and did not undercut the agreement. The prosecutor acted in good faith.

Pro se, Mr. Julian challenges the following conditions of his community supervision: regular polygraphs, abstention from alcohol, and not being in the presence of minors. He argues for the first time on appeal that the court has no authority to impose these conditions.

■ The right to challenge the conditions is not waived by the failure to object below. *State v. Paine*, 69 Wn. App. 873, 850 P.2d 1369, *review denied*, 122 Wn.2d 1024 (1993). A sentence imposed without statutory authority can be addressed for the first time on appeal, and this court has both the power and the duty to grant relief when necessary. *Id.* at 883-84.

■ "Community supervision" is a period of time during which a convicted felon is subject to crime-related prohibitions and other sentence conditions. RCW 9.94A.030(8). A "crime related prohibition" is an order of the court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted. It does not include orders directing the offender affirmatively to participate in rehabilitative programs or to perform any other affirmative conduct. RCW 9.94A.030(11). While the

link between the condition imposed and the crime committed need not be causal, the condition must be related to the circumstances of the crime. *State v. Llamas-Villa*, 67 Wn. App. 448, 456, 836 P.2d 239 (1992). The court can order those affirmative acts that are necessary to monitor compliance with its orders. RCW 9.94A.120(15).

█ Polygraphs and urinalyses are classified as monitoring tools rather than actual conditions of community placement. *State v. Riles*, 135 Wn.2d 326, 340, 957 P.2d 655 (1998). The court can therefore impose them to enforce its other lawful conditions. *Riles* abrogates *State v. Holland*, 80 Wn. App. 1, 4, 905 P.2d 920 (1995), the case Mr. Julian relies on in contending polygraphs are outside the court's discretion to impose.

As the State concedes, the problem with the alcohol prohibition is not the monitoring, but the court's power to impose that condition at all.

█ The Sentencing Reform Act of 1981 (SRA) provides that conditions of community supervision must relate directly to the crime for which the felony offender was convicted. RCW 9.94A.030(8). " 'Persons may be punished for their crimes and they may be prohibited from doing things which are directly related to their crimes, but they may not be coerced into doing things which are believed will rehabilitate them.' " *State v. Parramore*, 53 Wn. App. 527, 530, 768 P.2d 530 (1989) (emphasis omitted) (quoting DAVID BOERNER, SENTENCING IN WASHINGTON § 4.5 (1985)). In the absence of a finding that use or possession of alcohol contributed to the offense, the court exceeded its statutory authority by imposing the condition. *Parramore*, 53 Wn. App. at 531. Indeed, nowhere in the record does the court make any connection between the offense and alcohol use.

To impose requirements that are not crime related under a community supervision sentence for other than a first offender, the sentencing court must invoke the exceptional sentence provision of the SRA, RCW 9.94A.120(2). *State v. Gaines*, 122 Wn.2d 502, 515, 859 P.2d 36 (1993). The court did not do so here. The alcohol prohibition was outside the authority of the court to impose.

 The court can forbid a sex offender from contacting specific classes of individuals. RCW 9.94A.120(20). The court ordered Mr. Julian not to be in the company of persons under 18 without an adult present with knowledge of his criminal history, not to spend the night where minors are present, and to inform the court of any romantic relationship with a woman with children so she could be informed.

 Mr. Julian's victim was four years old. He contends that the court's prohibition is overinclusive because when the statute authorizing the prohibition uses the word "children," it means only little tykes, not teenagers. He cites no authority supporting his construction of the statute. The restriction on the presence of minors is lawful.

The condition of community supervision requiring Mr. Julian to abstain from alcohol is reversed. The judgment of the court in all other respects is affirmed.

BROWN, A.C.J., concurs.

SWEENEY, J. (dissenting) — I respectfully dissent. By remaining silent, the State failed to honor its plea agreement with William M. Julian.

When a court accepts a plea of guilty in a criminal prosecution, neither the rights of the defendant nor the obligations of the State are left to the discretion of the court. They are embodied in both statute and court rule. Both the statute and the rule are clear and unambiguous.

As the majority concedes, where statutory language is clear and unambiguous, the meaning must be derived from the language of the statute itself, not from judicial construction or interpretation. In interpreting criminal statutes, a literal and strict interpretation must be given. *State v. Wilson*, 125 Wn.2d 212, 216-17, 883 P.2d 320 (1994).

Moreover, even if the statutory language were not plain, the rule of lenity imposes another basic and necessary limitation on the court's power of statutory interpretation. A criminal statute that has two possible interpretations is to be strictly construed to resolve any ambiguity in favor of

the defendant. *In re Personal Restraint of Hopkins*, 137 Wn.2d 897, 901, 976 P.2d 616 (1999); *State v. Lively*, 130 Wn.2d 1, 14, 921 P.2d 1035 (1996).

It is a well-settled rule that where the Legislature uses certain statutory language in one instance and different language in another we presume a different intent. *State v. Jackson*, 137 Wn.2d 712, 724, 976 P.2d 1229 (1999). And courts should construe statutes so as to give meaning to all the words. *State v. Riles*, 135 Wn.2d 326, 340, 957 P.2d 655 (1998). A court may not read into a statute language it thinks the Legislature inadvertently left out. *State ex rel. Hagan v. Chinook Hotel, Inc.*, 65 Wn.2d 573, 579, 399 P.2d 8 (1965). Here, the majority effectively deletes language it thinks the Legislature inadvertently put in.

The language of the Sentencing Reform Act of 1981 is plain. It says: "If a plea agreement has been reached by the prosecutor and the defendant . . . they shall *at the time of the defendant's plea state to the court, on the record*, the nature of the agreement and the reasons for the agreement." RCW 9.94A.090(1) (emphasis added). The court rule is equally unequivocal. When a defendant pleads guilty pursuant to an agreement with the prosecuting attorney, CrR 4.2 allows the defendant's prior criminal record to be filed with the court before the plea hearing. CrR 4.2(e). As to the plea agreement itself, however, the rule requires more than filing a copy with the court: "The nature of the agreement and the reasons for the agreement *shall be made a part of the record at the time the plea is entered.*" CrR 4.2(e) (emphasis added).

By signing the plea agreement, Mr. Julian agreed to waive his right to have the State prove beyond a reasonable doubt every element of the charge. *State v. Tourtellotte*, 88 Wn.2d 579, 583, 564 P.2d 799 (1977). The court was fully apprised of this by its copy of the agreement. Nevertheless, the statute and rule required the defendant to state in open court, both when his plea was entered and again at sentencing, what he had agreed to and his reasons for doing so. Accordingly, the court led Mr. Julian through this recitation

on the record, notwithstanding the fact it had a copy of the agreement.

Likewise, the State agreed to recommend alternative sentencing. The identical statute and court rule required the prosecuting attorney to state on the record in open court, both at the plea hearing and at sentencing, what the State had agreed to in exchange for the guilty plea, and the State's reasons for doing so. Again, the court provided an opportunity at both proceedings for the State to fulfill its statutory and constitutional obligation. On both occasions, the prosecuting attorney declined to speak.

Mr. Julian simply contends that "I don't have an awful lot to add" does not constitute a statement in open court of the nature of the agreement and the reasons therefor. Put another way, the State's performance of a promise to recommend a particular sentence must be distinguishable from the performance of a promise to make no sentencing recommendation at all. I agree.

The majority fails to reconcile its holding with *State v. Jones*, 46 Wn. App. 67, 70, 729 P.2d 642 (1986), in which this court held that the *oral performance* of the plea agreement in open court is required by statute and court rule; it is the written agreement that is discretionary. *Id*. An exhibition of enthusiasm for the recommendation is optional. *State v. Coppin*, 57 Wn. App. 866, 873, 791 P.2d 228 (1990). The recommendation itself is not. *State v. Jerde*, 93 Wn. App. 774, 780, 970 P.2d 781, *review denied*, 138 Wn.2d 1002 (1999). Moreover, to require compliance with the statute and rule does not unduly burden the judicial process.

I would reverse and remand for resentencing before a different judge with instructions to the State to affirmatively recommend the special sexual offender sentencing alternative and to state its reasons for doing so.

Review denied at 143 Wn.2d 1003 (2001).