IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 80558-4-I |
| Respondent, | |
| v. | DIVISION ONE |
| ISMAEL DJILALI MOUSSAOUI, | UNPUBLISHED OPINION |
| Appellant. | |

COBURN, J. — Ismael Moussaoui appeals his conviction for rape in the second degree after a jury trial. He contends the trial court improperly denied his request for an evidentiary hearing at sentencing and commented on the evidence by using the victim's initials in the to-convict instruction. Finding no error, we affirm his convictions but remand to strike the community custody supervision fees from the judgment and sentence.

FACTS

Uber driver Ismael Moussaoui was hired to drive D.M.B. and her friend to the friend's apartment. When they arrived, the friend had a hard time waking up an extremely intoxicated D.M.B. Moussaoui agreed to carry D.M.B. into the apartment and started doing so while the friend entered the apartment and ran to her room to get cash to pay Moussaoui. However, Moussaoui instead drove

Citations and pin cites are based on the Westlaw online version of the cited material.

away with D.M.B.  The friend immediately called 911 to report what had happened.  Shortly after, police pulled over Moussaoui.

Around the same time, just a few blocks away from the apartment, D.M.B. was laying in the grass, naked from the waist down, with abrasions on her back and arms, and hysterical.  A neighbor woke up to sounds of sobbing and crying, saw D.M.B., and called 911.  A nurse specializing in sexual assault examined D.M.B. the same day.  The nurse testified that during the examination D.M.B. said the Uber driver held her against her will and raped her.

The State charged Moussaoui with rape in the second degree in violation of RCW 9A.44.050(1)(b).  The information alleged that Moussaoui engaged in sexual intercourse with D.M.B. under circumstances where D.M.B. was incapable of consenting to sexual intercourse by reason of being mentally incapacitated and physically helpless.

D.M.B. testified at trial.  She could not remember everything that happened, but she remembered awaking in the backseat of the Uber car to find Moussaoui also in the backseat underneath her without pants and his genitals exposed.  She also did not have any pants or underwear on but could not remember how they came off.  She remembered feeling his penis inside her vagina, begging him to please stop, and Moussaoui shushing her and telling her it was okay.  She remembers thinking that she needed to get away, that it was not right, and that she did not want to be there.  The next thing D.M.B. remembered was running around outside, Moussaoui catching up to her, and hitting her in the back of the head.

Police testified that Moussaoui, who did not testify at trial, told police that he engaged in consensual sexual contact with D.M.B. but never penetrated her vagina, and that while this was happening, D.M.B. changed her mind and began yelling for him to stop. DNA from semen found on vaginal swabs from D.M.B. matched a DNA sample from Moussaoui.

The jury found Moussaoui guilty of rape in the second degree as charged.

Prior to the sentencing hearing, Moussaoui filed a sentencing memorandum requesting an exceptional sentence below the standard range based on the mitigating circumstance that "[t]o a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident." RCW 9.94A.535(1)(a). Moussaoui's memorandum requested that the court grant him an evidentiary hearing to present evidence, by way of Moussaoui's own testimony, that D.M.B. was "an initiator and willing participant in sexual intercourse with Mr. Moussaoui."

At the sentencing hearing, after hearing from both parties regarding Moussaoui's request for an evidentiary hearing, the trial court denied his request but accepted and read his proffer and allowed him "wider latitude than may be normal to supplement what he wants to say in allocution." Moussaoui exercised his right of allocution but did not address his request for an evidentiary hearing or his claim that D.M.B. was an initiator or willing participant in the rape.

The court denied Moussaoui's request for an exceptional sentence downward. The court declined to impose an exceptional sentence stating,

> The Court declines to impose an exceptional sentence because it could not find substantial and compelling reasons to do

3

so. Nor does it find that the mitigating factor advanced by Mr. Moussaoui had been demonstrated by a preponderance of the evidence. The evidence presented at trial was clear, that [D.M.B.] lacked the capacity to consent. It was also clear that she sustained numerous bruises and road rash-type injuries on her body. The information now proffered is little more than a more detailed description of the evidence that was already presented to the jury and which the jury rejected. In fact, the proffer provided by Mr. Moussaoui's Counsel is somewhat inconsistent with the presentence investigation report we received yesterday, the September 4th version which discusses the use of alcohol and marijuana. So, the Court will not be imposing an exceptional sentence.

By so ruling, the Court is not saying that an exceptional sentence is never warranted in a case such as this. To be sure, there may be factual situations that justify the imposition of an exceptional sentence in a case such as this. But as explained, the facts presented to me do not establish by a preponderance of the evidence that [D.M.B.] was, to a significant degree, the initiator or willing participant in the rape at issue in this case. Nor is there any evidence before me that would justify a finding that substantial and compelling reasons exist in this case to impose an exceptional sentence downward. Accordingly, the Court denies Mr. Moussaoui's request for a downward exceptional sentence.

The court sentenced Moussaoui to a standard range, a minimum term of 96 months in prison. The court included an Appendix H to the judgment and sentence, which required that, as a condition of community custody, the defendant pay supervision fees as determined by the Department of Corrections.

Moussaoui appeals.

## DISCUSSION

### Defendant's Request for Evidentiary Hearing

Moussaoui first argues that the trial court erred by denying his request for an evidentiary hearing at sentencing to present testimony regarding his claim that D.M.B. was an initiator or willing participant in the rape.

A court "may impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence." RCW 9.94A.535(1). Here, Moussaoui sought to prove the mitigating circumstance that "to a significant degree, the victim [D.M.B.] was an initiator, willing participant, aggressor, or provoker of the incident." RCW 9.94A.535(1)(a).

Moussaoui argues that RCW 9.94A.530(2) entitled him to an evidentiary hearing to present testimony regarding his claim that D.M.B. was an initiator or willing participant in the rape. The statute provides:

> In determining any sentence other than a sentence above the standard range, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or *proved in a trial* or at the time of sentencing, or proven pursuant to RCW 9.94A.537. Acknowledgment includes not objecting to information stated in the presentence reports and not objecting to criminal history presented at the time of sentencing. Where the defendant *disputes material facts*, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence…"

RCW 9.94A.530(2) (emphasis added).

In his written motion requesting an evidentiary hearing, Moussaoui proffered the following facts that he contends are relevant to his claim that D.M.B. was an initiator or willing participant in the rape:

> 19. One of the women then asked Mr. Moussaoui if he could help bring [D.M.B.] into Ms. Coty's residence. When Mr. Moussaoui picked her up, [D.M.B.] whispered that she wanted to go home, she wanted him to take her home, and she wanted Mr. Moussaoui to come with her. Their faces were close together and he felt she was trying to seduce him.
> 20. Mr. Moussaoui took [D.M.B.] back to the car. [D.M.B.] walked part of the way with no help and got into the back seat. Mr. Moussaoui asked her for an address and she said not to worry, to just start driving.

5

21. They drove maybe half a block when [D.M.B.] reached over from the back seat and started fondling his genitals. She said to pull over somewhere, that anywhere was fine. It was about 4:00 am and he pulled over. It was dark and she told him to get into the back seat. He did so and she climbed on top of him and started kissing him.

22. She was tugging at his pants and so he helped her remove them. She had shorts on and she took them off. They were both naked from the waist down and she was grinding on him…

These proffered facts contesting the central issues at trial—consent and sexual intercourse—were not "disputed material facts" at sentencing for which Moussaoui was entitled to an evidentiary hearing under RCW 9.94A.530(2). The types of disputed material facts contemplated by RCW 9.94A.530(2) which entitle a defendant to an evidentiary hearing are new facts at sentencing—that is, those facts not previously admitted, acknowledged, or proven. For example, in State v. Talley, 83 Wn. App. 750, 757, 923 P.2d 721, we held that the sentencing court was required to hold an evidentiary hearing where the defendant had entered an Alford[1] plea—clearly manifesting an intention not to admit the State's factual allegations—and it was undisputed that the sentencing court relied on facts in police reports and in the State's probable cause certification that the defendant neither admitted nor acknowledged for sentencing purposes. See also State v. Cabos, 178 Wn. App. 692, 697-700, 315 P.3d 600 (2013) (sentencing court erred by failing to hold evidentiary hearing when defendant objected to every prior conviction which controlled his offender score).

---

[1] North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

6

In contrast, Moussaoui was trying to dispute facts the State had proven at trial, which RCW 9.94.530(2) explicitly permits the sentencing court to rely on. Moussaoui was not presenting evidence of a mitigating factor but instead presenting evidence of a complete defense which had already been rejected by the jury. In sentencing Moussaoui, the judge relied on facts that had been proven beyond a reasonable doubt at trial. Moussaoui fails to cite any case where a defendant was granted an evidentiary hearing at sentencing to dispute proven facts that he could have attempted to dispute during trial.

To support his request for an exceptional sentence, Moussaoui argues "[t]hat [D.M.B.] was unable to consent to sexual intercourse does not necessarily mean she could not initiate or willingly participate in it." In support of this proposition, Moussaoui cites State v. Clemens, 78 Wn. App. 458, 468, 898 P.2d 324 (1995). "There we affirmed the use of the 'willing participant' mitigating factor in an exceptional sentence, but only because the perpetrator and the victim were relatively close in age, and the victim, not the perpetrator, initiated the contact." State v. Khanteechit, 101 Wn. App. 137, 140, 5 P.3d 727 (2000) (distinguishing Clemens, which involved rape of a child in the third degree, from a child-rape case between a 38-year-old and a 13-year-old). Clemens is distinguishable because the defendant was convicted of third degree rape of a child, which is a strict liability offense, and it did not involve a request for an evidentiary hearing at sentencing.

To convict Moussaoui of rape in the second degree, the jury was required to find that Moussaoui engaged in sexual intercourse with D.M.B. when D.M.B.

7

was "incapable of consent by reason of being physically helpless or mentally incapacitated." RCW 9A.44.050(1)(b). "Mental incapacity" is a condition existing at the time of the offense which prevents a person from understanding the nature or consequences of the act of sexual intercourse whether that condition is produced by illness, defect, the influence of a substance, or from some other cause. RCW 9A.44.010(4). "Physically helpless" means a person who is unconscious or for any other reason is physically unable to communicate unwillingness to an act. RCW 9A.44.010(5).

As the trial court aptly put:

> The evidence presented at trial was clear, that [D.M.B.] lacked the capacity to consent. It was also clear that she sustained numerous bruises and road rash-type injuries on her body. The information now proffered is little more than a more detailed description of the evidence that was already presented to the jury and which the jury rejected.

In short, Moussaoui was not entitled to an evidentiary hearing under RCW 9.94A.530(2) to re-litigate the rape that had already been proven beyond a reasonable doubt at trial.

<u>Use of Victim's Initials in To-Convict Jury Instruction</u>

Moussaoui contends the use of D.M.B.'s initials in the to-convict instruction on rape in the second degree[2] was an improper judicial comment on the evidence in violation of article IV, section 16 of the Washington State

---

[2] D.M.B.'s initials were used in two elements of the crime of rape in the second degree in the to-convict instruction: "(1) That on or about September 4, 2017, the defendant engaged in sexual intercourse with D.M.B.; and (2) That the sexual intercourse occurred when D.M.B. was incapable of consent by reason of being physically helpless or mentally capacitated…"

Constitution.

Article IV, section 16 of the Washington Constitution provides that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." This constitutional provision prohibits a judge "from 'conveying to the jury his or her personal attitudes toward the merits of the case' or instructing a jury that 'matters of fact have been established as a matter of law.' " State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting State v. Becker, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)). We review de novo whether a jury instruction constitutes an improper comment on the evidence "within the context of the jury instructions as a whole." Levy, 156 Wn.2d at 721.

We recently rejected the argument that using a victim's initials in the to-convict instruction was an improper judicial comment on the evidence in State v. Mansour, 14 Wn. App. 2d 323, 470 P.3d 543 (2020), review denied 196 Wn.2d 1040, 479 P.3d 708 (2021). We held that a trial court's use of initials to identify a victim of child molestation in the to-convict instructions was not a judicial comment on the evidence because identifying a victim either by full name or initials "did not impermissibly instruct the jury that a matter of fact had been established as a matter of law." Id. at 330. And a juror would likely not presume that the individual identified by her initials was a victim, or that the court considered her one, merely because the court chose to use her initials. Id.

Like the victim in Mansour, D.M.B. in the instant case testified using her full name at trial and was consistently referred to by her full name throughout the

9

proceedings; her identity was not concealed. Identifying D.M.B. by her initials did not impermissibly instruct the jury that a matter of fact had been established as a matter of law. See id. A juror would not presume that D.M.B. was a victim, or that the court considered her one, merely because the court chose to use her initials. See id. In short, Moussaoui fails to provide any compelling reason to depart from Mansour here. The use of D.M.B.'s initials was not an improper judicial comment on the evidence.[3]

### Community Custody Supervision Fees

Moussaoui argues that the trial court erred by imposing Department of Corrections community custody supervision fees. RCW 9.94A.703(2)(d) provides that "[u]nless waived by the court, as part of any term of community custody, the court shall order an offender to: (d) Pay supervision fees as determined by the department." Because supervision fees are waivable, they are discretionary legal financial obligations (LFOs). State v. Dillion, 12 Wn. App. 2d 133, 152, 456 P.3d 1199 (2020) (citing State v. Lundstrom, 6 Wn. App. 2d 388, 396 n.3, 429 P.3d 1116 (2018)). The preprinted language ordering supervision fees was buried in the appendix to the judgment and sentence form and did not give the sentencing judge the option on the form to waive it short of having to find it and physically strike it out. The court imposed only mandatory LFOs, did not

---

[3] Because we find no error in using D.M.B.'s initials in the to-convict instruction, we reject Moussaoui's argument that their counsel rendered ineffective assistance in proposing the instruction using D.M.B.'s initials. See State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (person claiming ineffective assistance of counsel must show that his counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances).

discuss the supervision fees, and did not impose any other discretionary LFOs. The State concedes that supervision fees should be stricken from the judgment and sentence. We accept the State's concession.

Affirmed, but remanded to the trial court to strike the supervision fees from the judgment and sentence.

_____
Coburn, J.

WE CONCUR:

_____
Andrus, A.C.J.

_____
Appelwick, J.