69 P.3d 901 (2003)
STATE of Washington, Respondent,
v.
Michal Johnathen XAVIAR, Appellant.
No. 28438-3-II.
Court of Appeals of Washington, Division 2.
June 3, 2003.
*902 Thomas E. Weaver, Attorney at Law, Port Orchard, WA, for appellant.
Robert Lee Naon, Kitsap County Prosecutor's Office, Port Orchard, WA, for respondent.
SEINFELD, J.
Michal Xaviar contends that the prosecutor breached the State's plea agreement by commenting at his sentencing hearing about the egregious nature of the crime and describing potential aggravating factors. He also contends that under Apprendi,[1] the State must prove to a jury the existence of aggravating circumstances beyond a reasonable doubt. We disagree with the later contention but agree that the prosecutor undercut the sentencing recommendation. Thus, we reverse the sentence and remand.

*903 FACTS
Xaviar pleaded guilty to sexual exploitation of a minor, first- and second-degree child rape, and first-degree child molestation. In exchange, the State agreed to recommend a 240-month sentence, the bottom of the standard sentence range for the charges.
At the sentencing hearing, the prosecutor made the agreed upon 240-month recommendation. But instead of stopping there, and without the court's prompting, she proceeded to (1) emphasize the graveness of the situation; (2) reiterate the charges that the State did not bring; (3) note that the State had forgone the opportunity to ask for a 60-year exceptional sentence; and (4) highlight aggravating circumstances that would support an exceptional sentence.
After also hearing from parents of some of the victims and after reviewing the Department of Corrections's presentence investigation report, the trial court imposed a 480-month exceptional sentence. The court relied on the following aggravating circumstances: (1) deliberate cruelty; (2) vulnerable victims; (3) abuse of a position of trust and authority to facilitate the commission of the offenses; (4) an ongoing pattern of sexual abuse; and (5) danger to society.
Xaviar appeals the exceptional sentence.

DISCUSSION
I. Breach of the Plea Agreement
The State contends that the prosecutor did not undercut the sentencing recommendation but was merely placing her recommendation within the larger context of the case and showing that she was aware of the disturbing circumstances surrounding Xaviar's crimes. But this justification cannot support what amounts to a breach of the agreement.
By entering into a plea bargain, the defendant gives up important constitutional rights. State v. Van Buren, 101 Wash.App. 206, 211, 2 P.3d 991 (2000). For this reason, the defendant can raise the issue of the prosecutor's breach for the first time on appeal, as Xaviar does here. Van Buren, 101 Wash.App. at 211-12, 2 P.3d 991.
Further, the constitutional dimensions of the plea agreement make it essential that the State fulfill its "implied promise to act in good faith." State v. Williams, 103 Wash.App. 231, 235, 11 P.3d 878 (2000). To do so, it "must adhere to its terms by recommending the agreed upon sentence." State v. Jerde, 93 Wash.App. 774, 780, 970 P.2d 781.
Moreover, the State may not undercut the plea bargain "either explicitly or implicitly through conduct indicating an intent to circumvent the agreement." Williams, 103 Wash.App. at 236, 11 P.3d 878. We determine whether the State violated its duty to adhere to the agreement by reviewing the entire sentencing record and applying an objective standard. Williams, 103 Wash. App. at 236, 11 P.3d 878. Neither good motivations nor a reasonable justification will excuse a breach. Van Buren, 101 Wash.App. at 213, 2 P.3d 991.
RCW 9.94A.535 authorizes the court to impose an exceptional sentence "if it finds... that there are substantial and compelling reasons justifying an exceptional sentence." The statute lists several "illustrative factors which the court may consider in the exercise of its discretion to impose an exceptional sentence," including that (1) the defendant's conduct "manifested deliberate cruelty to the victim"; (2) the defendant knew that the victim "was particularly vulnerable or incapable of resistance due to extreme youth"; (3) the offense was sexually motivated; and (4) "[t]he offense was part of an ongoing pattern of sexual abuse of the same victim under the age of eighteen years manifested by multiple incidents over a prolonged period of time." RCW 9.94A.535.
Here, the prosecutor commented that (1) under the plea bargain the State agreed not to pursue other charges, including multiple counts of first- and second-degree child molestation, first- and second-degree rape of a child, and depictions of a minor in sexually explicit conduct, or to seek a 60-year exceptional sentence; (2) the situation was "grave" and Xaviar was "one of the most prolific child molesters that this office has ever seen"; (3) molesting children permeated every aspect of *904 Xaviar's life and was his reason for being, as indicated by the fact that he created a corporation and named the victims as corporate officers; (4) Xaviar's conduct involved "grooming" children as young as 10 years old "in the worst manner possible" for a long time until he was caught; (5) the victims suffered huge trauma and would never have a normal relationship; (6) Xaviar has exhibited no remorse; and (7) his conduct constituted a "monumental violation of trust" in that his victims considered him a father figure, a best friend, and a guardian, and he gave them money, alcohol, and drugs to facilitate having sex with them. Report of Proceedings at 34-35.
The above unsolicited remarks obviously refer to the aggravating factors in RCW 9.94A.535 that justify an exceptional sentence. By highlighting these compelling aggravating facts, the prosecutor clearly signaled to the court her lack of support for a standard range sentence and thereby "effectively undercut the plea agreement in a transparent attempt to sustain an exceptional sentence." Jerde, 93 Wash.App. at 782, 970 P.2d 781 ("Without prompting from the court, the first prosecutor laid the foundation by articulating several factual and legal arguments that would support an exceptional sentence."); compare State v. Coppin, 57 Wash. App. 866, 875, 791 P.2d 228 (1990) (prosecutor's comment that if not for the plea agreement he would have sought an exceptional sentence did not breach agreement because trial court solicited the comment and attorneys have duty under RPC 3.3 to answer court's questions honestly).
Further, it appears that the court adopted the prosecutor's reference to violation of the victims' trust as an aggravating circumstance to support its exceptional sentence. This went beyond the presentence investigation report, which did not mention abuse of the victims' trust as an aggravating circumstance; it only noted that the victims' parents trusted Xaviar to care for their children. See Jerde, 93 Wash.App. at 782, 970 P.2d 781 (prosecutor undercut plea agreement by, among other things, "highlighting aggravating factors and even add[ing] an aggravating factor not found in the presentence report")
The State argues that the prosecutor's comments were necessary to demonstrate her knowledge of the underlying facts and circumstances; this is not persuasive. First, the presentence investigation report included a detailed description of the facts and circumstances of Xaviar's misconduct and the prosecutor indicated that she was familiar with the report. This was sufficient to show that the prosecutor was aware of the underlying facts and circumstances. And second, absent a question from the court, the prosecutor's knowledge of the details of the crime was not a relevant issue before the court.
Therefore, we remand this matter to the superior court where Xaviar may either withdraw his guilty plea and proceed to trial on the charges or enforce the plea bargain agreement before a judge who has not heard the State's unsolicited comments. Van Buren, 101 Wash.App. at 217-18, 2 P.3d 991; Jerde, 93 Wash.App. at 782-83, 970 P.2d 781. If Xavier elects to enforce the plea agreement, "the State must present the agreed-upon sentencing recommendation without equivocation" but "the sentencing court retains the discretion to accept or reject the recommendation." Williams, 103 Wash.App. at 239, 11 P.3d 878; Van Buren, 101 Wash. App. at 218, 2 P.3d 991; see also In re Powell, 117 Wash.2d 175, 199, 814 P.2d 635 (1991).
II. Proof of Aggravating Circumstances
Xaviar argues that under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the State must prove aggravating factors that support an exceptional sentence to a jury under a beyond a reasonable doubt standard. The State responds that the Washington Supreme Court rejected this contention in State v. Gore, 143 Wash.2d 288, 21 P.3d 262 (2001).
The Apprendi court held that the Sixth Amendment right to trial by jury and the Fourteenth Amendment right to due process requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, *905 and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. Apprendi had pleaded guilty to second-degree possession of a firearm for an unlawful purpose, a crime punishable by imprisonment for between five and ten years. Apprendi, 530 U.S. at 468-69, 120 S.Ct. 2348. But at sentencing, the trial court applied New Jersey's hate crime sentencing enhancement statute, which authorized the court to sentence Apprendi to prison for between ten and twenty years if it found by a preponderance that he committed the crime with a racially biased purpose. Apprendi, 530 U.S. at 468-71, 120 S.Ct. 2348.
The Apprendi court recognized that a criminal defendant is constitutionally entitled to "`a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" 530 U.S. at 477, 120 S.Ct. 2348 (quoting United States v. Gaudin, 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)) (emphasis added). The court also determined that:
New Jersey threatened Apprendi with certain pains if he unlawfully possessed a weapon and with additional pains if he selected his victims with a purpose to intimidate them because of their race. As a matter of simple justice, it seems obvious that the procedural safeguards designed to protect Apprendi from unwarranted pains should apply equally to the two acts that New Jersey has singled out for punishment. Merely using the label "sentence enhancement" to describe the latter surely does not provide a principled basis for treating them differently.
Apprendi, 530 U.S. at 476, 120 S.Ct. 2348.
The Apprendi court noted that historically,
[t]he judge's role in sentencing is constrained at its outer limits by the facts alleged in the indictment and found by the jury. Put simply, facts that expose a defendant to a punishment greater than that otherwise legally prescribed were by definition "elements" of a separate legal offense.
530 U.S. at 483 n. 10, 120 S.Ct. 2348 (emphasis added). It reasoned that a defendant has the right to have all facts, whether labeled as an "element" or as a "sentencing factor," that are necessary to constitute a statutory offense tried to a jury and proved beyond a reasonable doubt. Apprendi, 530 U.S. at 494, 120 S.Ct. 2348. This standard includes findings that "expose the defendant to a greater punishment than that authorized by the jury's guilty verdict[.]" Apprendi, 530 U.S. at 494, 120 S.Ct. 2348.
Under the statute in Apprendi, the question of whether the defendant committed his crime with a racially biased purpose directly turned on the defendant's intent and state of mind, or mens rea, and was a core criminal offense element. 530 U.S. at 492-93, 120 S.Ct. 2348. As the finding on this issue exposed Apprendi to a greater punishment, he was entitled to have it tried to a jury and proved beyond a reasonable doubt. Apprendi, 530 U.S. at 494-97, 120 S.Ct. 2348.
Subsequently, the Washington Supreme Court addressed Apprendi's effect on Washington's Sentencing Reform Act (SRA) in Gore, 143 Wash.2d at 311-12, 21 P.3d 262. The Gore court held that aggravating factors supporting an exceptional sentence need not be proved to a jury beyond a reasonable doubt because under the SRA,
an exceptional sentence upward may be based upon statutory or nonstatutory aggravating factors. However, the sentencing judge cannot impose an exceptional sentence greater than the statutory maximum based upon such factors ... The state statutory scheme permits a judge to impose an exceptional sentencestill within the range determined by the Legislature and not exceeding the maximum after considering the circumstances of an offense.
143 Wash.2d at 313-14, 21 P.3d 262 (citations omitted).
Then, in Ring, the United States Supreme Court addressed Arizona's capital punishment sentencing scheme, which the Supreme Court had earlier upheld in Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). Under Arizona law, first-degree murder is punishable by death or life imprisonment, but the statute cross references another statute that authorizes the death penalty if the court finds at least *906 one of 10 enumerated aggravating circumstances. Ring, 536 U.S. at 592, 122 S.Ct. 2428.
Walton upheld the judge's role and preponderance burden of proof in Arizona's capital punishment sentencing scheme because the aggravating circumstances qualified as sentencing considerations, rather than as elements of the offense. 497 U.S. at 649, 110 S.Ct. 3047. In affirming Walton, the Apprendi court reasoned that a conviction of first-degree murder in Arizona carried a maximum sentence of death. 530 U.S. at 496-97, 120 S.Ct. 2348.
But the Ring court disagreed. It reasoned that because under Arizona law, "a `death sentence may not legally be imposed ... unless at least one aggravating factor is found to exist beyond a reasonable doubt,'" under the jury's verdict Ring faced a maximum punishment of life imprisonment. 536 U.S. at 597, 122 S.Ct. 2428 (quoting State v. Ring, 200 Ariz. 267, 279, 25 P.3d 1139 (2001)). Thus, "Arizona's enumerated aggravating factors operate[d] as `the functional equivalent of an element of a greater offense.'" Ring, 536 U.S. at 609, 122 S.Ct. 2428 (quoting Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348) (emphasis added). Consequently, Ring had the right to have a jury find that factor by proof beyond a reasonable doubt. Ring, 536 U.S. at 609, 122 S.Ct. 2428.
At oral argument in this case, Xaviar's counsel acknowledged that his argument is inconsistent with the Washington Supreme Court's analysis in Gore. Nonetheless, he urges us to apply Ring, suggesting that it "casts doubt" on the continued viability of Gore. Br. of Appellant at 16. But we find Ring distinguishable from Gore; its analysis of Apprendi does not call into question Gore's validity.[2]
The Arizona statute at issue in Ring expressly enumerated ten aggravating circumstances, any one of which, if found by the sentencing judge, authorized the judge to increase the jury's presumptive life imprisonment sentence to death. ARIZ.REV.STAT. ANN. § 13-703 (2001). Washington's SRA is fundamentally different.
In limiting the court's discretion by requiring it to find a substantial and compelling reason justifying an exceptional sentence (RCW 9.94A.535), but without enumerating specific factual findings that the court would have to make, the Washington Legislature did not create "`the functional equivalent of an element of a greater offense.'" Ring, 536 U.S. at 609, 122 S.Ct. 2428 (quoting Apprendi, 530 U.S. at 494 n. 19, 120 S.Ct. 2348). Nor is the standard range under the SRA a presumptive maximum sentence that accompanies the jury's verdict. The standard range is unique to the particular defendant, calculated by looking to that individual's criminal history, and it applies only to the "typical" offense. State v. Flores-Moreno, 72 Wash.App. 733, 744-45, 866 P.2d 648 (1994); see also DAVID BOERNER, SENTENCING IN WASHINGTON: A LEGAL ANALYSIS OF THE SENTENCING REFORM ACT OF 1981 § 501 (1985). Rather than serving as a statutory limit on the judge's sentencing authority, the purpose of the standard range is to provide some uniformity in sentencing for those who commit a "typical" crime.
By contrast, the statutory maximum sets an upper limit on the period of confinement that the sentencing judge may not exceed even in the presence of aggravating circumstances. In giving the judge limited discretion to sentence up to this maximum, the SRA logically presupposes that the judge will evaluate the circumstances of the offense and impose a greater or lesser sentence based on this evaluation. RCW 9.94A.535. Absent this authority, the judge would be left with only arbitrary reasons for selecting a specific period of confinement, an outcome that would be inconsistent with the Ring court's concern for clear sentencing standards.
Based on the above analysis, and because under the SRA the trial court may impose an exceptional sentence only after the jury has *907 found proof beyond a reasonable doubt of all elements of the crime, Ring does not apply to the SRA. See Ring, 536 U.S. at 602, 122 S.Ct. 2428. Therefore we conclude that the State does not need to prove aggravating circumstances to a jury or satisfy a proof beyond a reasonable doubt standard.
Accordingly, we reverse and remand for Xaviar to elect either to withdraw his guilty plea or to enforce the plea bargain agreement.
We concur: ARMSTRONG, J., and QUINN-BRINTNALL, A.C.J.
NOTES
[1] Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[2] Several states amended their capital sentencing statutes in response to Ring. See State v. Gales, 265 Neb. 598, 658 N.W.2d 604, 608 (2003); Garden v. State, 815 A.2d 327, 342 n. 4 (Del.2003); State v. Viramontes, 204 Ariz. 360, 64 P.3d 188, 189 n. 1 (2003).