# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 60019-6-II |
| Respondent, | consolidated with |
| | No. 60022-6-II |
| v. | |
| | UNPUBLISHED OPINION |
| CHELSIE ELIZABETH ROSE MCDANIEL, | |
| Appellant. | |

VELJACIC, J. — Chelsea Elizabeth Rose McDaniel appeals her guilty pleas to ten counts of identity theft in the second degree, one count of organized retail theft in the first degree, and two counts of organized retail in the second degree.

McDaniel pleaded guilty in a global plea agreement that covered two cause numbers. She argues that the prosecutor breached the plea deal at sentencing and that the trial court used an improper basis to impose an exceptional sentence. We affirm.

FACTS

I.     BACKGROUND

In January 2023, police arrested McDaniel in connection with the theft of a credit card from a mailbox. A search incident to the arrest turned up numerous credit cards and other pieces of identification with other people's names on them. The State charged McDaniel with one count of identity theft in the first degree, six counts of identity theft in the second degree, and one count of

organized retail theft in the first degree in Pierce County Superior Court cause number 23-1-00498-3.

In May 2023, police arrested McDaniel again for fraudulently exchanging clothing at a store. During a search incident to arrest, police again found McDaniel in possession of many pieces of identification that did not belong to her. The State charged McDaniel with one count of identity theft in the first degree, two counts of identity theft in the second degree, and one count of organized retail theft in the second degree in Pierce County Superior Court cause number 23-1-01336-2.

After McDaniel agreed to plead guilty, the State amended the informations to convert each case's count of identity theft in the first degree to the second degree. The trial court accepted McDaniel's plea in both cases.

There was no joint sentencing recommendation. The parties agreed that the State would be able to request a sentence at the high end of the standard sentencing range while McDaniel would be free to argue for a sentence at the low end of the range, or an exceptional downward sentence.

McDaniel's criminal history included one count of burglary in the second degree, six counts of identity theft in the second degree, one count of assault in the third degree, and one count of theft in the second degree. Thus, her offender score was 9 points before any of her current convictions were counted. With her current offenses included, McDaniel had an offender score of 20 points for each count.

II.    SENTENCING

At sentencing, the State explained why it was seeking a high end sentence:

We're asking for that high end for this plea because of her number of points, because on any one of these counts, the State would be justified in seeking a high-

2

end sentence, without her criminal history. . . [I]f these were only current offenses, we could ask for the high end. If any one of these were held individually without the other current counts and relied only on her prior record, then . . . the State would be completely justified in seeking a high sentence, and so when you combine both of these factors together, a high standard range sentence is appropriate.

Rep. of Proc. (RP) (Aug. 16, 2024) at 254-55. The State then acknowledged that McDaniel had pleaded guilty, and pointed out the benefit she received from doing so:

[S]he was originally charged with identity theft in the first degree, which has a higher standard range than what's requested here. So if convicted, we would be asking for the 83 months. And also, Your Honor, given the number of offenses here, the State would be absolutely justified in invoking free crimes provisions and talking about how many of these offenses would effectively go unpunished, but that's not what we're doing here, because she has pled guilty.

RP (Aug. 16, 2024) at 255-56. The State then explained why it believed the high end of the standard range was an appropriate sentence, rather than any alternative sentence.

McDaniel then requested a prison-based Drug Offense Sentencing Alternative (DOSA). McDaniel acknowledged that her offender score was well over 9 points, but blamed substance abuse disorder and her codefendant for her crimes.

The trial court began its ruling by acknowledging that McDaniel's decision to plead guilty was laudable. But the trial court also pointed out that identity theft was a crime with major consequences for its victims, and which McDaniel had been committing for most of her adult life.

And this may be either in whole or in part related to a substance abuse issue. It may be, but I don't have anything before me that demonstrates that. What I do know is that you are in a class of offenders that, prior to these offenses, got here with a maximum offender score, okay? In other words, you're a nine-plus. You can't go any higher. That creates problems for a subsequent sentencing court like this one because one of the things that sentencing is supposed to do is to increase punishment each time you're back here for sentencing. And that's the message both to you, that there's going to be severe consequences, and to the community that the justice system is looking out for them.
. . . .
And I've thought about your case long and hard, because I've had . . . your ex here before me on four different trials, and I know that at least in one of them, you were a part of that. And so in thinking about it, I think that the Court needs to

send a message, not just to you, but to the community, that I'm not going to tolerate repeat offenders, especially the number of repetitions that you have chalked up.

RP (Aug. 16, 2024) at 262-63.

The trial court then imposed an exceptional sentence based on the free crimes provision, RCW 9.94A.525(2)(c), imposing consecutive sentences at the top of the standard sentencing range for each cause number. It explained, "once you reach nine-plus, now you violated the law again, and there was no increase in punishment. And for those reasons, the court is imposing an exceptional sentence upward." RP (Aug. 16, 2024) at 264.

McDaniel appeals.

## ANALYSIS

I.    BREACH OF THE PLEA DEAL

McDaniel first argues that the prosecutor breached the plea agreement by undercutting the recommendation for a standard range sentence with reminders that the State could have requested an exceptional upward sentence. We disagree.

As an initial matter, the State contends that McDaniel must establish a manifest error affecting a constitutional right in order for this court to review her breach claim. But a claim that a prosecutor has breached a plea agreement is reviewable for the first time on appeal. *State v. Xaviar*, 117 Wn. App. 196, 199, 69 P.3d 901 (2003).

"A plea agreement is a contract between the State and the defendant." *State v. MacDonald*, 183 Wn.2d 1, 8, 346 P.3d 748 (2015). Accordingly, "[i]n every case, the State has a 'good faith obligation to effectuate the plea agreement.'" *State v. Molnar*, 198 Wn.2d 500, 512, 497 P.3d 858 (2021) (quoting *State v. Sledge*, 133 Wn.2d 828, 840, 947 P.2d 1199 (1997)).

The State "may not undercut the plea bargain 'either explicitly or implicitly through conduct indicating an intent to circumvent the agreement.'" *Xaviar*, 117 Wn. App. at 199 (quoting

*State v. Williams*, 103 Wn. App. 231, 236, 11 P.3d 878 (2000)). "Therefore, if the State agreed to recommend a standard-range sentence, it may not 'undercut[ ] the plea agreement by emphasizing facts generally considered only in imposing an exceptional sentence.'" *Molnar*, 198 Wn.2d at 512 (alteration in original) (quoting *State v. Monroe*, 126 Wn. App. 435, 440, 109 P.3d 449 (2005) (plurality opinion)). "[W]e must 'review [the] prosecutor's actions and comments objectively from the sentencing record as a whole to determine whether the plea agreement was breached.'" *State v. Ramos*, 187 Wn.2d 420, 433, 387 P.3d 650 (2017) (alternation in original) (quoting *State v. Carreno-Maldonado*, 135 Wn. App. 77, 83, 143 P.3d 343 (2006)).

A prosecutor may breach a plea agreement by purporting to speak on behalf of victims, insisting on an unnecessary hearing to examine witnesses about aggravating factors may breach a plea agreement, or by arguing for a sentence above the State's recommendation without being asked to do so. *Molnar*, 198 Wn.2d 514 (listing cases). And this court has held that a prosecutor breached a plea agreement by submitting a 16-page sentencing memorandum arguing eight aggravating factors, most of which were statutory bases for an exceptional sentence, and insisted that protecting the community required a sentence of *at least* the high end of the standard range. *Williams*, 103 Wn. App. at 236-37.

In contrast, briefly informing a judge about the facts of the offenses and the state of the applicable law does not breach a plea agreement. *Ramos*, 187 Wn.2d at 456. In particular, the Washington Supreme Court has explained that observing that a defendant's actions *would* have been a basis for an aggravated sentence does not necessarily breach the plea agreement. *Id.* at 455.

Here, the plea agreement allowed the State to request the top of the standard range while also allowing McDaniel to advocate for a DOSA or exceptional downward sentence. Accordingly, the State necessarily had to support its request for a more severe sentence. The prosecutor made

two brief comments observing that McDaniel had a significant criminal history and that she was receiving the benefit of the State *not* seeking what would have been a justified exceptional sentence, in exchange for her decision to plead guilty. The prosecutor did not request an unnecessary hearing to interrogate witnesses about McDaniel's criminal history, but instead briefly summarized the relevant facts of McDaniel's history for the judge. *Id.* at 456-57. Thus, we hold that the prosecutor did not breach the plea agreement.

II. EXCEPTIONAL SENTENCE

McDaniel also argues that the trial court imposed an excessive sentence. She reasons that the trial court's desire to send a message to the community was an improper basis for imposing an exceptional sentence. We disagree.

We review de novo whether the reasons the trial court stated justify a departure from the standard sentencing range. RCW 9.94A.585(4)(a); *State v. Law*, 154 Wn.2d 85, 94, 110 P.3d 717 (2005).

A sentencing court "may impose a sentence outside the standard sentence range for an offense if it finds . . . that there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. The offender score tops out at "9 or more," after which the standard sentencing range stops increasing and further convictions do not affect the sentence range. RCW 9.94A.510; *State v. France*, 176 Wn. App. 463, 468, 308 P.3d 812 (2013). A trial court may impose an exceptional upward sentence if "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished," which is known as the free crimes provision. RCW 9.94A.535(2)(c). "In other words, if the number of current offenses results in the legal conclusion that the defendant's presumptive sentence is identical to that which would be imposed if the defendant had committed

fewer current offenses, then the court may impose an exceptional sentence." *France*, 176 Wn. App. at 469.

Here, McDaniel's offender score reached 9 points on criminal history alone, before any of her 13 current offenses were counted. McDaniel selectively quotes from the trial court's ruling to argue that the basis for the sentence was "deterrence of others." Br. of Appellant at 21. But this selective quoting eliminates the context of the trial court's ruling. The trial court first explained to McDaniel that "you are in a class of offenders that, *prior to these offenses*, got here with a maximum offender score," which "creates problems for a subsequent sentencing court like this one because one of the things that sentencing is supposed to do is to increase punishment each time you're back here for sentencing." RP (Aug. 16, 2024) at 262 (emphasis added). "And that's the message both to you, that there's going to be severe consequences, and to the community that the justice system is looking out for them." RP (Aug. 16, 2024) at 262. "I think that the Court needs to send a message, not just to you, but to the community, that I'm not going to tolerate repeat offenders, especially the number of repetitions that you have chalked up." RP (Aug. 16, 2024) at 263. "[O]nce you reach nine-plus, now you violated the law again, and there was no increase in punishment. And for those reasons, the Court is imposing an exceptional sentence upward." RP (Aug. 16, 2024) at 264.

It is true that protecting the public is consistent with the purposes of the Sentencing Reform Act, chapter 9.94A RCW, but is not an appropriate basis for an exceptional sentence. RCW 9.94A.010(4); *see* RCW 9.94A.535(2). However, in context, the trial court was clearly applying the free crimes provision and explaining why McDaniel's extensive criminal history justified a sentence outside the standard range. Thus, we affirm the exceptional sentence.

CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Cruser, C.J.

_____
Price, J.